1  ROBBINS GELLER RUDMAN
    & DOWD LLP
2  RANDALL J. BARON (150796)
   A. RICK ATWOOD, JR. (156529)
3  DAVID T. WISSBROECKER (243867)
   EDWARD M. GERGOSIAN (105679)
4  DANIELLE S. MYERS (259916)
   655 West Broadway, Suite 1900
5  San Diego, CA  92101-8498
   Telephone:  619/231-1058
6  619/231-7423 (fax)
   randyb@rgrdlaw.com
7  ricka@rgrdlaw.com
   dwissbroecker@rgrdlaw.com
8  egergosian@rgrdlaw.com
   dmyers@rgrdlaw.com
9
   Lead Counsel for Plaintiffs
10
   [Additional counsel appear on signature page.]
11
                    UNITED STATES DISTRICT COURT
12
                    CENTRAL DISTRICT OF CALIFORNIA
13
                         WESTERN DIVISION
14

| | |
|---|---|
| In re HOT TOPIC, INC. SECURITIES LITIGATION | Lead Case No. 2:13-cv-02939-SJO(JCx) |
| This Document Relates To:<br><br>ALL ACTIONS. | CLASS ACTION<br><br>LEAD PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT<br><br>DATE:    June 1, 2015<br>TIME:    10:00 a.m.<br>CTRM:   1<br>JUDGE   Hon. S. James Otero |

1022521_1

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ............................................................................... 1

II.   BACKGROUND AND SUMMARY OF THE LITIGATION ...................... 2

III.  STANDARDS FOR PRELIMINARY APPROVAL ................................. 5

IV.   THE COURT SHOULD PRELIMINARILY APPROVE THE
      SETTLEMENT .................................................................................. 6

      A.   The Strength of Lead Plaintiff's Case and the Risk, Expense,
           Complexity, and Likely Duration of Further Litigation Support
           Preliminary Approval .............................................................. 7

      B.   The Risk of Maintaining Class Action Status Throughout the
           Trial Supports Preliminary Approval ......................................... 9

      C.   The Amount Offered in Settlement Supports Preliminary
           Approval ............................................................................... 10

      D.   The Extent of Discovery Completed and the Stage of the
           Proceedings Support Preliminary Approval ................................ 11

      E.   The Experience and Views of Counsel Support Preliminary
           Approval ............................................................................... 12

      F.   The Absence of Collusion Between the Parties Supports
           Preliminary Approval .............................................................. 13

      G.   The Proposed Notice Is Adequate ............................................ 13

V.    PROPOSED SCHEDULE OF EVENTS .............................................. 15

VI.   CONCLUSION ............................................................................... 15

1022521_1

# TABLE OF AUTHORITIES

**Page**

## CASES

*Ahern v. Cent. Pac. Freight Lines*,
846 F.2d 47 (9th Cir. 1988) ................................................................. 6

*Binder v. Gillespie*,
184 F.3d. 1059 (9th Cir. 1998) ........................................................... 9

*Churchill Vill., L.L.C. v. GE*,
361 F.3d 566 (9th Cir. 2004) ............................................................ 14

*In re Apollo Grp., Inc. Sec. Litig.*,
No. 08-16971, 2010 U.S. App. LEXIS 14478
(9th Cir. June 23, 2010) ..................................................................... 8

*In re Apollo Grp., Inc. Sec. Litig.*,
No. CV 04-2147-PHX-JAT, 2008 U.S. Dist. LEXIS 61995
(D. Ariz. Aug. 4, 2008) .................................................................. 3, 8

*In re BankAtlantic Bancorp, Sec. Litig.*,
No. 07-61542-CIV-UNGARO, 2011 U.S. Dist. LEXIS 48057
(S.D. Fla. Apr. 25, 2011), *aff'd*, 688 F.3d 713 (11th Cir. 2012) ......................... 8

*In re Celera Corp. Sec. Litig.*,
No. 5:10-CV-02604-EJD, 2015 U.S. Dist. LEXIS 42228
(N.D. Cal. Mar. 31, 2015) ........................................................ *passim*

*Linney v. Cellular Alaska P'ship*,
151 F.3d 1234 (9th Cir.1998) ........................................................... 10

*Me. State Ret. Sys. v. Countrywide Fin. Corp.*,
No. 2:10-CV-00302 MRP, 2013 U.S. Dist. LEXIS 179190
(C.D. Cal. Dec. 5, 2013) ........................................................ 9, 11, 12

*Officers for Justice v. Civil Serv. Comm'n*,
688 F.2d 615 (9th Cir. 1982) ...................................................... 6, 7, 10

*Pac. Enters. Sec. Litig.*,
47 F.3d 373 (9th Cir. 1995) ............................................................. 12

1022521_1

**Page**

*Williams v. First Nat'l Bank,*
  216 U.S. 582 (1910) ...................................................... 6

**STATUTES, RULES AND REGULATIONS**

15 United States Code
  §78n(a) ........................................................... 2, 3, 4
  §78t(a) ............................................................ 2, 3, 4
  §78u-4(a)(7) .......................................................... 14
  §78u-4(b)(3)(B) ........................................................ 3

Federal Rules of Civil Procedure
  Rule 23(c)(1)(C) ....................................................... 9
  Rule 23(c)(2)(B) ...................................................... 13
  Rule 23(e) ............................................................ 14
  Rule 23(e)(1) ......................................................... 13
  Rule 23(e)(2) .......................................................... 5
  Rule 23(e)(3) .......................................................... 1
  Rule 26(f) ............................................................. 4

**SECONDARY AUTHORITIES**

4 Alba Conte & Herbert Newberg,
  4 *Newberg on Class Actions* (4th ed. 2002)
  §11:50 ................................................................. 9

5 James Wm. Moore,
  *Moore's Federal Practice* (3d. ed. 2002)
  §23.85[2][b] ........................................................... 7

*Manual for Complex Litigation* (4th ed. 2004)
  §21.632 ................................................................ 5

William B. Rubenstein,
  4 *Newberg on Class Actions* (5th ed. 2014)
  §13:15 ................................................................. 6

1022521_1

# I.     INTRODUCTION

After several years of hard-fought litigation, Lead Plaintiff City of Livonia Employees' Retirement System and Defendants have reached an agreement to settle this securities class action for $14,900,000 in cash (the "Settlement Amount").[1]

The Settlement is the result of extensive arm's-length negotiations between the parties and their highly experienced counsel in the midst of complex and vigorously contested litigation after an unsuccessful private mediation session and on the eve of the first scheduled deposition.  The Settlement is on behalf of the same Class previously certified by the Court on November 3, 2014 (Dkt. No. 82), and, if approved, will resolve all of Lead Plaintiff's and the Class's claims against Defendants.[2]

The Settling Parties respectfully submit that the proposed Settlement is fair, reasonable and adequate, and therefore ask the Court to enter an order: (a) granting preliminary approval of the proposed Settlement (*see* Exhibit A to the Stipulation); (b) approving the parties' proposed form and method for giving notice of the pendency of this action and the Settlement to the Class (*see* Exhibits A-1 and A-3 to the Stipulation); (c) directing that the notice be given to Class Members (*see id.*); and (d) scheduling a Final Approval Hearing at which the Court will determine whether: (i) the proposed Settlement of the Litigation on the terms and conditions provided for in the Stipulation is fair, reasonable, and adequate to the Class and merits the Court's approval; (ii) a Judgment as provided in ¶1.13 of the Stipulation should be entered; and (iii) Lead Plaintiff's counsel's application for an award of attorneys' fees and expenses should be approved.

---

[1]     All capitalized terms used herein have the same meanings as in the Stipulation of Settlement, dated as of April 30, 2015 ("Stipulation"), filed concurrently herewith. *See* Fed. R. Civ. P. 23(e)(3) (requiring parties to "file a statement identifying any agreement made in connection with the proposal").

[2]     Pursuant to the Stipulation, the Class definition also excludes those Persons who timely and validly seek exclusion from the Class.  *See* Stipulation, ¶1.3.

## II. BACKGROUND AND SUMMARY OF THE LITIGATION

On March 7, 2013, Hot Topic, Inc. ("Hot Topic" or the "Company") announced that the Company would be acquired by Sycamore Partners LLC ("Sycamore")[3] for $14 per share, or approximately $600 million (the "Merger").  Thereafter, between March 8, 2013 and April 25, 2013, seven putative class action complaints were filed in the Superior Court of California, County of Los Angeles alleging breach of fiduciary duty claims in connection with the proposed acquisition of the Company by Sycamore.  On May 7, 2013, the parties in the state court lawsuits entered into a stipulation to consolidate the seven cases pending in Los Angeles Superior Court (the "Consolidated State Action").  The Consolidated State Action was stayed on July 1, 2013 by agreement of the parties at the Initial Status Conference, pending litigation of the Federal Action (described below).

In April and May 2013, four putative class action complaints (*Horn v. Hot Topic, Inc.*, Case No 2:13-cv-02939; *Walton v. Hot Topic, Inc.*, Case No. 2:13-cv-02941; *Davis v. Hot Topic, Inc.*, Case No. 8:13-cv-00787; and *Carter v. Hot Topic, Inc.*, Case No. 2:13-cv-04153) were filed in the United States District Court for the Central District of California alleging violations of §14(a) and §20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §78n(a) and §78t(a), as well as breach of fiduciary duty claims in connection with the proposed acquisition of Hot Topic by Sycamore.  *See* Dkt. No. 1.  On May 31, 2013, Hot Topic held a special meeting of shareholders of the Company to approve the Agreement and Plan of Merger dated as of March 6, 2013 (the "Merger Agreement"), during which meeting

---

[3]     "Sycamore" refers collectively to the following entities identified in the Definitive Proxy Statement filed with the U.S. Securities and Exchange Commission ("SEC") on May 10, 2013 (the "Proxy Statement"): 212 F Holdings LLC, a Delaware limited liability company (also referred to as the "Parent"), HT Merger Sub Inc., a California corporation and a wholly owned subsidiary of Parent (referred to as the "Merger Sub"); and Sycamore Partners Management, L.L.C., affiliates of which beneficially own both Parent and Merger Sub.

1  the Company's shareholders voted in favor of the approval of the Merger Agreement
2  and the principal terms of the Merger.  On June 12, 2013, the Merger closed.

3    On July 29, 2013, the Court consolidated the four complaints as *In re Hot*
4  *Topic, Inc. Sec. Litig.*, Lead Case No. 2:13-cv-02939 (the "Federal Action").  On
5  August 20, 2013, the Court appointed the City of Livonia Employees' Retirement
6  System as Lead Plaintiff and approved Lead Plaintiff's selection of Robbins Geller
7  Rudman & Dowd LLP ("Robbins Geller") as Lead Counsel.  Dkt. No. 42.  Thereafter,
8  on October 4, 2013, Lead Plaintiff filed a consolidated complaint for violation of §14(a)
9  and §20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder, 17
10 C.F.R. §240.14a-9, breach of fiduciary duty, and aiding and abetting breach of fiduciary
11 duty (the "Consolidated Complaint") against Defendants and Sycamore on behalf of all
12 shareholders whose Hot Topic common stock was purchased by Sycamore in
13 connection with the Merger.  Dkt. No. 44.

14   On November 18, 2013, Defendants and Sycamore filed motions to dismiss the
15 Consolidated Complaint.  Dkt. Nos. 46-47.  Lead Plaintiff opposed the motions on
16 December 3, 2013.  Dkt. Nos. 48-50.  Defendants and Sycamore filed their replies on
17 December 10, 2013.  Dkt. Nos. 51-52.  Pursuant to 15 U.S.C. §78u-4(b)(3)(B), all
18 proceedings were stayed during the pendency of the motions to dismiss.

19   On May 2, 2014, the Court granted in part and denied in part the motions to
20 dismiss.  Dkt. No. 57.  The breach of fiduciary duty claims were dismissed with leave
21 to amend, the federal claims and aiding and abetting claims against Sycamore were
22 dismissed with prejudice and the federal claims against the Defendants were upheld.
23 *Id.*  On May 27, 2014, Lead Plaintiff informed the Court of its intent not to amend the
24 Consolidated Complaint.  Dkt. No. 58.

25   Defendants answered the Consolidated Complaint on June 16, 2014.  Dkt. No.
26 60.  Judgment was entered dismissing all claims against Sycamore with prejudice on
27 July 3, 2014.  Dkt. No. 62.

28

1022521_1

1   On July 14, 2014, Lead Plaintiff and Defendants filed a Joint Rule 26(f)
2   Discovery Plan and the Court held a Scheduling Conference on August 1, 2014.  Dkt.
3   Nos. 63, 70.

4   On October 6, 2014, Lead Plaintiff filed a motion for class certification.  Dkt.
5   No. 74.  The Court granted the motion on November 3, 2014, certifying a class as
6   follows:

7   > All holders of Hot Topic, Inc. ("Hot Topic") common stock on the
8   > record date, May 3, 2013, who were allegedly harmed by defendants'
9   > violations of §14(a) and §20(a) of the Securities Exchange Act of 1934
10  > in connection with the Merger of Hot Topic and Sycamore Partners as
11  > alleged in the litigation (the "Class"). Excluded from the Class are
12  > defendants, the officers and directors of the Company at all relevant
13  > times, members of their immediate families and their legal
14  > representatives, heirs, successors or assigns and any entity in which
15  > defendants have or had a controlling interest.

16  Dkt. No. 82 at 9.  The Court also appointed Lead Plaintiff as the Class Representative
17  and Robbins Geller as Class Counsel.  *Id.*

18  Between summer 2014 and spring 2015, Lead Plaintiff conducted extensive
19  discovery, seeking documentary and testimonial evidence from Defendants and
20  numerous third parties.  Depositions were scheduled to begin on March 31, 2015,
21  before the parties reached an agreement to settle the Litigation.  Prior to the
22  Settlement, Lead Plaintiff's counsel received and reviewed over 25,200 records
23  produced by Defendants and third parties.  Lead Plaintiff also filed a motion to
24  compel Sycamore's production in response to a subpoena served upon it.

25  In February 2015, the parties attended a mediation session before Jed D.
26  Melnick, a JAMS mediator, which was not successful.

27  Defendants' counsel and Lead Plaintiff's counsel continued to engage in
28  informal discussions in an effort to resolve the Litigation before depositions were

- 4 -

1  scheduled to begin on March 31, 2015.  Thereafter, as reflected in this Stipulation, the

2  Settling Parties reached an agreement to settle the Litigation on March 27, 2015.

3        Defendants continue to vigorously deny that they committed any violations of

4  the federal securities laws, deny all the allegations asserted against them, and disclaim

5  any wrongdoing or liability whatsoever.  Lead Plaintiff has agreed to settle its claims

6  and those of the Class upon the terms and provisions set forth in the Stipulation after,

7  and as a result of, their factual investigation, the factual discovery undertaken, and

8  thorough research of the law applicable to the claims underlying the Litigation; after

9  balancing the substantial benefits that Lead Plaintiff and the Class will receive from

10  the Settlement against the uncertain outcome, risks, difficulties, and delays of

11  litigation, in general, and in complex actions such as this Litigation, in particular; and

12  after concluding that the Settlement is in the best interests of the Class.

13  **III.  STANDARDS FOR PRELIMINARY APPROVAL**

14        Pursuant to Rule 23(e)(2), a class action settlement must be "fair, reasonable,

15  and adequate."   Fed. R. Civ. P. 23(e)(2).   "Review of a proposed class action

16  settlement generally involves two hearings." *Manual for Complex Litigation* §21.632,

17  at 320 (4th ed. 2004).  "First, counsel submit the proposed terms of settlement and the

18  judge makes a preliminary fairness evaluation." *Id.*[4]  At this stage, the Court makes "a

19  preliminary determination on the fairness, reasonableness, and adequacy of the

20  settlement terms and must direct the preparation of notice of the certification,

21  proposed settlement, and date of the final fairness hearing." *Id.* at 321.  Second, at the

22  final approval hearing, the Court will be asked to make a determination as to whether

23  the Settlement is fair, reasonable, and adequate under all of the circumstances.  *See*

24  Fed. R. Civ. P. 23(e)(2).

25        "Preliminary approval is appropriate 'where the proposed settlement is neither

26  illegal nor collusive and is within the range of possible approval.'" *In re Celera Corp.*

27

28      

---

[4]      All emphasis is added and all citations are omitted unless otherwise indicated.

1022521_1

*Sec. Litig.*, No. 5:10-CV-02604-EJD, 2015 U.S. Dist. LEXIS 42228, at *9 (N.D. Cal. Mar. 31, 2015) (quoting William B. Rubenstein, 4 *Newberg on Class Actions* §13:15 (5th ed. 2014)) (granting preliminary approval to securities class action settlement). "Relevant factors for the court to consider include: (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; and (7) the absence of collusion between the parties." *Celera*, 2015 U.S. Dist. LEXIS 42228, at *13. Importantly, as the Ninth Circuit has recognized, "[t]his is by no means an exhaustive list of relevant considerations" and the "relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claims advanced, the types of relief sought, and the unique facts and circumstances presented by each individual case." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).

The proposed Settlement here meets these standards. As such, the Settling Parties respectfully submit that the proposed Settlement should be preliminarily approved so that notice can be provided to Class Members.

## IV. THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT

"Compromises of disputed claims are favored by the courts . . . ." *Williams v. First Nat'l Bank*, 216 U.S. 582, 595 (1910). Indeed, the "Ninth Circuit is firmly 'committed to the rule that the law favors and encourages compromise settlements.'" *Ahern v. Cent. Pac. Freight Lines*, 846 F.2d 47, 48 (9th Cir. 1988). Moreover, "'[i]t is well recognized that settlement agreements are judicially favored as a matter of sound public policy'" and that "'[s]ettlement agreements conserve judicial time and limit expensive litigation.'" *Id.*

- 6 -

1022521_1

Here, the proposed Settlement is within the range of possible approval and satisfies the preliminary approval standard.

**A.    The Strength of Lead Plaintiff's Case and the Risk, Expense, Complexity, and Likely Duration of Further Litigation Support Preliminary Approval**

"An important consideration in judging the reasonableness of a settlement is the strength of the plaintiffs' case on the merits balanced against the amount offered in the settlement."  5 James Wm. Moore, *Moore's Federal Practice*, §23.85[2][b] (3d. ed. 2002).  In assessing the strength of the case, the Court need not "reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements."  *Officers for Justice*, 688 F.2d at 625.

If there were further litigation, and a trial, there is a real risk that Lead Plaintiff might fail to convince the jury of the merits of its case, the Defendants could obtain judgment in their favor, and the Class could recover nothing.  Here, several factors exist which make it more likely that, without the proposed Settlement, this case would require additional large expenditures of time and money and there would be a significant risk that the Class would obtain a less beneficial result than the one provided by the Settlement, including that:

(a)    Defendants are represented by some of the most accomplished counsel in the country who are well versed in the defense of complex securities class actions such as this;

(b)    Defendants have consistently and vigorously denied liability and asserted facially reasonable explanations in response to Lead Plaintiff's allegations;

(c)    When the parties reached an agreement to settle the Litigation, depositions were scheduled to commence and the parties had not yet briefed summary judgment motions.  There is a risk that the evidence developed via depositions could

- 7 -

1   have undermined Lead Plaintiff's allegations and enhanced Defendants' chances of

2   success at the summary judgment stage.  The summary judgment briefing undoubtedly

3   would have led to increased time and expense of the Litigation;

4        (d)   Pre-trial litigation would have likely necessitated substantial

5   contested discovery motion practice as well as summary judgment and evidentiary

6   motions (including *Daubert* motions) involving the significant expenditure of time

7   and expense;

8        (e)   A trial would necessarily involve hundreds of exhibits and

9   testimony regarding complex factual issues resulting in a foreseeable battle of the

10  experts on dry financial matters, the outcome of which is by no means certain; and

11       (f)   Post-trial appeals involving lengthy and detailed analysis of

12  nuanced legal and factual issues that, depending on the outcome of the appeals, could

13  require remand to the district court for re-trial on any number of issues.

14       Even if the Class recovered a judgment after trial that was larger than the

15  amount of the Settlement, given the time value of money, any such future recovery

16  might not be more beneficial than receiving the benefits of the proposed Settlement

17  now.  Moreover, any judgment after trial would still be subject to the continuing risks

18  and vicissitudes of litigation through likely appeals.  Experience shows that even very

19  large judgments, recovered after lengthy litigation and trial, can be completely lost on

20  appeal.[5]

21       And, even if the verdict was in the Class's favor, and was not overturned, post-

22  trial collection efforts could take many more years of litigation.  For example, in

23  _____

[5]       Indeed, a district court in a securities class action case overturned a jury verdict
24  in plaintiffs' favor on loss causation grounds.  *See In re Apollo Grp., Inc. Sec. Litig.*,
    No. CV 04-2147-PHX-JAT, 2008 U.S. Dist. LEXIS 61995 (D. Ariz. Aug. 4, 2008).
25  While the plaintiffs ultimately prevailed on appeal to the Ninth Circuit, *see In re
    Apollo Grp., Inc. Sec. Litig.*, No. 08-16971, 2010 U.S. App. LEXIS 14478 (9th Cir.
26  June 23, 2010), this case illustrates the inherent uncertainties facing both plaintiffs and
    defendants at every stage of litigation.  *See also In re BankAtlantic Bancorp, Sec.
27  Litig.*, No. 07-61542-CIV-UNGARO, 2011 U.S. Dist. LEXIS 48057 (S.D. Fla. Apr.
    25, 2011) (reversing jury verdict in plaintiff's favor and granting defendants' post-trial
28  motion for judgment as a matter of law), *aff'd*, 688 F.3d 713 (11th Cir. 2012).

- 8 -

*Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc.*, No. 02-C-5893 (N.D. Ill.), on May 7, 2009, the jury returned a verdict in plaintiff's favor on liability after seven years of hard-fought litigation. Six years later, the parties are **still** awaiting the outcome of an appeal of the judgment before the Seventh Circuit Court of Appeals. Over a decade after the complaint was originally filed, and despite Robbins Geller obtaining a favorable jury verdict on liability and having judgment entered, not a single class member has received a penny. In short, the timing of any ultimate resolution of this action on the merits (and in turn, compensation to injured Class Members) via trial and appeal is unpredictable at best.

Because of these risks, courts recognize that "'[i]n most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results.'" *Me. State Ret. Sys. v. Countrywide Fin. Corp.*, No. 2:10-CV-00302 MRP (MANx), 2013 U.S. Dist. LEXIS 179190, at *55 (C.D. Cal. Dec. 5, 2013) (quoting 4 Alba Conte & Herbert Newberg, 4 *Newberg on Class Actions*, §11:50 at 155 (4th ed. 2002)). Accordingly, this factor supports preliminary approval of the proposed Settlement.

### B. The Risk of Maintaining Class Action Status Throughout the Trial Supports Preliminary Approval

While the Court previously certified a class in this case, Rule 23(c)(1)(C) expressly provides that the decision "may be altered or amended before final judgment." Fed. R. Civ. P. 23(c)(1)(C). It is entirely possible that Defendants could have sought summary judgment on an element of the Class's claim, rendering certification moot. *See, e.g.*, *Binder v. Gillespie*, 184 F.3d 1059 (9th Cir. 1998) (affirming district court's decision to decertify class, grant summary judgment in defendants' favor, and enter judgment in defendants' favor). Thus, to the extent this factor is applicable, it weighs in favor of preliminary approval.

- 9 -

**C.   The Amount Offered in Settlement Supports Preliminary Approval**

The Ninth Circuit has recognized that "it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements." *Officers for Justice*, 688 F.2d at 625.  As such, the "proposed settlement is not to be judged against a hypothetical or speculative measure of what ***might*** have been achieved by the negotiators." *Id.* (emphasis in original).  Indeed, the "'fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved.'" *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir.1998).

Here, Defendants contended that the potential recovery was $0 because "Plaintiff and members of the putative class have suffered no damage[s]." *See* Dkt. No. 60 at 33 (Third Affirmative Defense).  Obviously, Lead Plaintiff disagreed with Defendants' assessment of the case, and the Court may recall that the Consolidated Complaint alleged that, at the time of the Merger, "analysts valued Hot Topic shares at $16.40 per share," while shareholders received $14 per share in the Merger.  *See* Dkt. No. 57 at 12 (citing Consolidated Complaint, ¶91).  Based on that allegation alone, the estimated "damage" per share was approximately $2.40 per share.

Assuming every eligible investor (other than Defendants or other excluded Persons) that held Hot Topic common stock on the record date, May 3, 2013, and suffered damages therefrom participates in this Settlement, Lead Plaintiff's counsel estimates that the average distribution will be approximately $0.42 per share of Hot Topic common stock before the deduction of Court-approved fees and expenses.  *See* Stipulation, Exhibit A-1.  However, a 100% claims rate is extraordinarily high.  Indeed, one class action claims administrator has estimated that a "typical securities settlement may conclude with between 20 and 35 percent of class members having

1022521_1

filed claims."[6] Thus, if the typical 20% or 35% of investors (other than Defendants or other excluded Persons) who held Hot Topic common stock on the record date, May 3, 2013, and suffered damages therefrom participate in the Settlement, Lead Plaintiff's counsel estimates that the average distribution will range between approximately $1.21 per share and $2.12 per share of Hot Topic common stock before the deduction of Court-approved fees and expenses – amounts ranging from 50% to nearly 90% of estimated damages.

Moreover, the total amount of the Settlement, $14.9 million, is well above the median securities class action settlement from 1996-2013 and over double the median amount in 2014.  *See* Declaration of Danielle S. Myers in Support of Unopposed Motion for Preliminary Approval of Class Action Settlement, Ex. A at 1, 6 (Laarni T. Bulan, Ellen M. Ryan & Laura E. Simmons, *Securities Class Action Settlements – 2014 Review & Analysis* (Cornerstone Research 2015)).  The $14.9 million Settlement is also: (1) above the median settlement in 2014 for cases with a public pension fund as a lead plaintiff; (2) more than double the median settlement for 1996-2014 for cases settled after a ruling on a motion to dismiss but before a ruling on a motion for summary judgment; and (3) almost double the median settlement in the Ninth Circuit between 2005-2014.  *Id.* at 16, 20, 22.

"Given the risk and uncertainty of continued litigation in the hopes of obtaining a larger recovery, the proposed settlement amount weighs in favor of final approval." *Me. State Ret. Sys.*, 2013 U.S. Dist. LEXIS 179190, at *59.

### D. The Extent of Discovery Completed and the Stage of the Proceedings Support Preliminary Approval

"The amount of discovery completed indicates whether the parties had an 'adequate opportunity to assess the pros and cons of settlement and further

---

[6] *See* http://www.rustconsulting.com/Knowledge_Sharing/Articles_and_Publications/ID/124/Anticipating_Claims_Filing_Rates_in_Class_Action_Settlements.

- 11 -

1    litigation.'"  *Id.* at *60.  Here, although on the eve of the first deposition, the parties

2    reached an agreement after engaging in significant document discovery.  Indeed, more

3    than 25,200 records were produced by Defendants and several third parties.  Lead

4    Plaintiff and Class Counsel therefore had adequate information before them to gauge

5    the value of the Class's claims and assess whether Defendants' proffered Settlement

6    Amount adequately compensated Class Members for their alleged damages.  *See id.* at

7    *61 (finding production of documents "better enabled the . . . Plaintiffs to assess in

8    detail the strengths and risks associated with continued litigation"); *Celera*, 2015 U.S.

9    Dist. LEXIS 42228, at *16-*17 (same).

10           Accordingly, this factor also supports preliminary approval.

11   **E.     The Experience and Views of Counsel Support Preliminary**

12   **         Approval**

13           "In reviewing a settlement for final approval, courts accord 'great weight' to the

14   recommendation of counsel."  *Me. State Ret. Sys.*, 2013 U.S. Dist. LEXIS 179190, at

15   *61.  Indeed, counsel "'are most closely acquainted with the facts of the underlying

16   litigation' and are therefore in an ideal position to assess the fairness of the settlement

17   offer."  *Id.* (citing and quoting *Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir.

18   1995)) ("'Parties represented by competent counsel are better positioned than courts to

19   produce a settlement that fairly reflects each party's expected outcome in the

20   litigation.'").

21           Here, the Court has twice approved of Robbins Geller as Class Counsel, first at

22   the lead plaintiff stage and next at the class certification stage.  *See* Dkt. Nos. 42, 82.

23   There can also be no doubt that Defendants' counsel are eminently qualified in their

24   area of expertise.  Based on the support of all counsel and all parties, the Court should

25   determine that this factor further supports granting preliminary approval.  *See Celera*,

26   2015 U.S. Dist. LEXIS 42228, at *17 ("Given that the court appointed class counsel

27   as Lead Counsel, it does not doubt that Lead Counsel has the necessary expertise to

28   litigate this case and reach settlement.").

### F. The Absence of Collusion Between the Parties Supports Preliminary Approval

The final factor courts consider at the preliminary approval stage is whether there is any indicia of collusion. *Celera*, 2015 U.S. Dist. LEXIS 42228, at *9, *18. The proposed Settlement in this case "was the product of arm's length negotiations between the parties with experienced counsel who understood the strengths and weaknesses of their respective positions." *Id.* at *18.

The parties reached their settlement agreement after an unsuccessful, day-long mediation session with Jed Melnick. In addition, the Stipulation provides that Defendants shall not have a reversionary interest in the Settlement Fund which, net of attorneys' fees and expenses, will be distributed to class members who submit valid claims. *See* Stipulation, ¶5.3(d). "These terms, combined with the parties' efforts in reaching a settlement through a mediation process, indicates the absence of collusion between the parties." *Celera*, 2015 U.S. Dist. LEXIS 42228, at *18.

The posture of the case (post-motion to dismiss, post-class certification), the extensive discovery undertaken, the participation in a private mediation session, and continued post-mediation attempts to resolve the litigation confirm that the parties reached the Settlement in a procedurally sound manner and that it was not the result of collusion or bad faith by the parties or counsel. As such, this factor weighs in favor of preliminary approval of the Settlement.

### G. The Proposed Notice Is Adequate

Pursuant to Rule 23(e)(1), "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). Purported class members must receive "the best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B). "The Ninth Circuit has stated that '[n]otice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *Celera*, 2015 U.S. Dist. LEXIS 42228, at *19 (quoting

- 13 -

1    *Churchill Vill., L.L.C. v. GE*, 361 F.3d 566, 575 (9th Cir. 2004)).   In addition,

2    pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), the

3    notice must contain certain information, including a statement of recovery, potential

4    outcome of the case, attorneys' fees or costs sought, identification of lawyers, and the

5    reasons for the settlement.   *See* 15 U.S.C. §78u-4(a)(7).   The proposed notices here

6    comport with both Rule 23(e) and the PSLRA.

7           The parties negotiated the form of the Notice of Pendency and Proposed

8    Settlement of Class Action (the "Notice") to be disseminated to the Class and request

9    that the Court approve of the form of notices attached to the Stipulation as Exhibits A-

10   1 (the Notice) and A-3 (the Summary Notice).   Lead Plaintiff proposes that the

11   Summary Notice be published once in *Investor's Business Daily*, which is a national

12   newspaper read by securities investors and investment professionals, and transmitted

13   once over a national newswire service.   The Claims Administrator will also mail the

14   Notice to all Class Members whose names and addresses can be identified as well as

15   notifying brokers and other nominees.   And, the Claims Administrator will maintain a

16   settlement website where key documents will be posted.   These proposed methods of

17   giving notice (similar, if not identical, to the methods used in countless other

18   securities class actions) have been "found to be satisfactory and meet[] due process."

19   *Celera*, 2015 U.S. Dist. LEXIS 42228, at *19-*20.

20          The form and content of the Notice and Summary Notice were prepared using

21   the Federal Judicial Center's Plain Language Notice Guide.   Both notices use "plain

22   English" to inform Class Members of the essential terms of the Settlement, the

23   procedures for requesting exclusion from the Class or objecting to the Settlement, and

24   provide specifics on the date, time, and place of the Final Approval Hearing.   *See*

25   Stipulation, Exhibits A-1 and A-3.   The notices also contain information regarding

26   Lead Plaintiff's counsel's fee and expense application and the proposed plan for

27   allocating the settlement proceeds among Class Members.   Thus, the notices fairly

28

- 14 -

apprise Class Members of their rights with respect to the Settlement, are the best notice practicable under the circumstances, and should be approved by the Court.

## V.     PROPOSED SCHEDULE OF EVENTS

In connection with preliminary approval of the Settlement, we request that the Court schedule deadlines for mailing of the Notice and publication of the Summary Notice, requesting exclusion from the Class, objecting to the Settlement, and submitting claim forms.  We also request that the Court set the date and time of the Final Approval Hearing.  The Settling Parties propose the following schedule:

| *EVENT* | *TIME FOR COMPLIANCE* |
| --- | --- |
| Initial mailing of Notice and Proof of Claim and Release form to Class Members ("Notice Date") | 14 calendar days after the Court signs and enters the Order |
| Deadline for publication of Summary Notice | 10 calendar days after the Notice Date |
| Deadline for filing initial papers in support of final approval of Settlement and application for attorneys' fees and expenses | 35 calendar days after the Notice Date |
| Deadline for objecting to the Settlement and/or application for attorneys' fees and expenses and submitting requests for exclusion from the Class | 55 calendar days after the Notice Date |
| Deadline for filing papers in response to any objections to the Settlement and/or application for attorneys' fees and expenses | 7 calendar days before the Final Approval Hearing |
| Deadline for submitting Proof of Claim and Release forms | 90 calendar days after the Notice Date |
| Final Approval Hearing | 100 days after the Notice Date |

## VI.     CONCLUSION

Because the proposed Settlement meets the standards for preliminary approval, Lead Plaintiff respectfully requests that the Court: (i) preliminarily approve the proposed Settlement as within the range of possible fairness, reasonableness and

- 15 -

1   adequacy; (ii) approve the proposed form and manner of notice to Class Members;

2   and (iii) schedule a date and time to consider final approval of the Settlement and the

3   application for attorneys' fees and expenses.

4   DATED:  April 30, 2015                    Respectfully submitted,

5                                             ROBBINS GELLER RUDMAN
                                                & DOWD LLP
6                                             RANDALL J. BARON
                                              A. RICK ATWOOD, JR.
7                                             DAVID T. WISSBROECKER
                                              EDWARD M. GERGOSIAN
8                                             DANIELLE S. MYERS

9

10                                                  s/ Danielle S. Myers
                                              DANIELLE S. MYERS
11
                                              655 West Broadway, Suite 1900
12                                            San Diego, CA  92101
                                              Telephone:  619/231-1058
13                                            619/231-7423 (fax)

14                                            Lead Counsel for Plaintiffs

15                                            VANOVERBEKE MICHAUD &
                                                TIMMONY, P.C.
16                                            THOMAS C. MICHAUD
                                              79 Alfred Street
17                                            Detroit, MI  48201
                                              Telephone:  313/578-1200
18                                            313/578-1201 (fax)

19                                            WOLF HALDENSTEIN ADLER
                                                FREEMAN & HERZ LLP
20                                            FRANCIS M. GREGOREK
                                              BETSY C. MANIFOLD
21                                            RACHELE R. RICKERT
                                              MARISA C. LIVESAY
22                                            750 B Street, Suite 2770
                                              San Diego, CA  92101
23                                            Telephone:  619/239-4599
                                              619/234-4599 (fax)

24                                            Additional Counsel for Plaintiff

25

26

27

28

- 16 -

1022521_1

CERTIFICATE OF SERVICE

I hereby certify that on April 30, 2015, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on April 30, 2015.

s/ Danielle S. Myers
DANIELLE S. MYERS

ROBBINS GELLER RUDMAN
 & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)

E-mail:  danim@rgrdlaw.com

- 17 -

1022521_1

# Mailing Information for a Case 2:13-cv-02939-SJO-JC Julie Horn v. Hot Topic Inc et al

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **A Rick Atwood , Jr**
  ricka@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Randall J Baron**
  randyb@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Courtney Anne Dreibelbis**
  cdreibelbis@gibsondunn.com,cdavis@gibsondunn.com,bakin@gibsondunn.com

- **Ian C Eisner**
  ieisner@winston.com,DOCKETLA@winston.com

- **Edward Michael Gergosian**
  egergosian@rgrdlaw.com

- **Joseph A Gorman**
  jgorman@gibsondunn.com,pbelloso@gibsondunn.com,tmorgan@gibsondunn.com

- **Francis M Gregorek**
  gregorek@whafh.com

- **Marisa C Livesay**
  livesay@whafh.com,davanzo@whafh.com,boyles@whafh.com

- **Betsy C Manifold**
  manifold@whafh.com,cabrera@whafh.com

- **Danielle S Myers**
  dmyers@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Rachele R Rickert**
  rickert@whafh.com,cabrera@whafh.com,boyles@whafh.com,cothran@whafh.com

- **John E Schreiber**
  jschreiber@winston.com,linda.chow-fortune@dl.com,pacercourtfile@winston.com,docketLA@winston.com,ian.eisner@dl.com,recordsla@winston.com,fposey@dl.com

- **Evan Jason Smith**
  esmith@brodsky-smith.com

- **James P Smith , III**
  JPSmith@winston.com

- **David T Wissbroecker**
  dwissbroecker@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Meryl L Young**
  myoung@gibsondunn.com,pmclean@gibsondunn.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)